UNITED STATES DISTICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION


MILO and LOIS KENTERA,

        Plaintiffs,

v.                                       Case No. 2:16-cv-01020-JPS


UNITED STATES OF AMERICA,

        Defendant,

_____


**PLAINTIFFS' BRIEF IN OPPOSITION TO
UNITED STATES' MOTION TO DISMISS AND IMPROPER VENUE**


      Plaintiffs, Milo and Lois Kentera, hereby oppose the United States' Motion to Dismiss

and Improper Venue as set forth below:

## I.    <u>INTRODUCTION</u>

      The issue before the Court is whether plaintiffs may seek judicial review in this Court to

dispute the government's assessment of non-willful civil penalties under Title 31 of the Bank

Secrecy Act, for failure to file certain informational returns.   The United States, in its 'Motion to

Dismiss' argues that the United States has not waived its sovereign immunity to suit and

plaintiffs' case must therefore be dismissed.

## II.    BACKGROUND

Plaintiffs in this case are retirees.    In 1984, plaintiff-husband inherited a foreign bank account located in Switzerland from his father upon his father's death.     Plaintiff-wife's name was added to the account shortly thereafter.  Since inheriting the account in 1984, plaintiffs have consistently disclosed the foreign account on their federal income tax returns.  Plaintiffs also disclosed the foreign account to their accountants.  Despite the disclosure, plaintiffs' accountants did not advise plaintiffs of the necessity of filing Form TD F 90.22.1 Report of Financial Bank and Financial Accounts ("FBAR"), for their foreign account.

The Bank Secrecy Act ("BSA") at 31 USC § 5311 *et seq.* requires United States residents and citizens to keep records and file report when they make a transaction or maintain a relation with a foreign financial agency.   The BSA permits assessments of penalties for failure to file an FBAR disclosure form as set forth in 31 USC § 5314, but mandates that no penalty shall be imposed if such violation was due to reasonable cause.  *See* 31 USC § 5321(a)(5)(B)(ii).   The authority to enforce the FBAR assessments has been delegated to the Internal Revenue Service ("IRS"). *See* 31 C.F.R. § 1010.810(g).

In 2014, the IRS assessed plaintiff-husband and plaintiff-wife a total of $40,500 and $10,500, respectively, in non-willful civil penalties for failure to file an FBAR for tax years 2006 through 2010.   Plaintiffs protested the IRS' decision, arguing that they fell within the reasonable cause exception to the FBAR penalty.  In 2015, IRS Appeals affirmed imposition of the non-willful FBAR civil penalty assessment against plaintiffs. The FBAR penalties assessed by the IRS against the plaintiffs constitute debts owed to a U.S. executive agency. The IRS is authorized to collect these debts using any methods enumerated in 31 USC § 3711. *See* 31 C.F.R.

§ 5.4(a)(6) (authorizing "treasury entities" to collect debts by offset of tax refunds or benefits, private collection agency, credit bureau reporting, or administrative wage garnishment).

Plaintiffs filed suit seeking judicial review of the IRS' assessments of the non-willful FBAR civil penalties based on a due process violation, and abuse of discretion. Plaintiffs' Complaint alleges a right to judicial review under 5 U.S.C § 702 of the Administrative Procedures Act ("APA"), and seeks a declaratory judgment holding the FBAR civil penalty assessments under 31 USC § 5321(a)(5), null and void.

On December 7, 2016, the United States moved to dismiss plaintiffs' case on the basis that the APA does not apply - and thus sovereign immunity is not waived - because 1) 28 USC § 1331 is not a waiver of sovereign immunity; and 2) the BSA does not provide for judicial review; and 3) adequate court remedy is available under 28 USC §1346 (a) (2) or 28 USC § 1491. Finally, although not entirely clear, the United States appears to suggest that a third court remedy includes plaintiffs waiting for the government to sue them. *See* Defendant's Brief ("Def. Brief"), pg. 5, ECF No. 16, ("In addition, if the Kenteras decline to pay and file suit for refund, the United States could commence its own suit to reduce the assessments to judgment and collect the penalties pursuant to 31 USC § 5321 (b)(2).")

Without conceding that they have adequate court remedy under the APA, plaintiffs do not dispute that 28 USC § 1331 is not a waiver of sovereign immunity. Plaintiffs also agree that the BSA does not specifically provide plaintiffs with judicial review of FBAR assessments, but dispute all other contentions set forth by the United States. Plaintiffs address each argument in turn.

**III.    ARGUMENT**

**A.    PLAINTIFFS DO NOT HAVE ADEQUATE COURT REMEDY IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

The Court of Federal Claims ("CFC") was established in 1855, and the Tucker Act enacted (in 1887), to open a judicial avenue for certain monetary claims against the United States.  U.S. v. James S. Bormes, 133 U.S. 12, 17 (2012).   Under the Tucker Act, the CFC has "jurisdiction to render judgment upon any claim against the United States, founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  *See* 28 USC § 1491 (a)(1).   The Tucker Act also waives the government's sovereign immunity for those actions.  U.S. v. Mitchell, 463 U.S. 206, 212–18, (1983); United States v. Testan, 424 U.S. 392, 397–98 (1976).

**1.    The Requirement Of A Money Mandating Statute in the Federal Court of Claims**

The United States contends that plaintiffs have adequate court remedy because they can pay all or a portion of the civil penalties for each year the penalty has been assessed and file a refund suit in the CFC federal court under 28 USC § 1491.    *See* Def. Brief, pg. 4-5, ECF No. 16.   However, the Tucker Act is only a jurisdictional statute and does *not* (emphasis added) create a substantive right of enforceable action against the United States for money damages. Testan, 424 U.S. at 398.     Therefore, in order to come within the jurisdictional reach and waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.  U.S. v. Mitchell, 463 U.S. at 216.  That is, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive regulation that provide a substantive right to money damages for the court to have jurisdiction.  Todd v. United States, 386 F.3d 1091, 1094 (Fed Cir. 2004); Roth v. United States,

4

378 F. 3d 1371, 1384 (Fed Cir 2004) ("Because the Tucker Act itself does not provide a substantive cause of action, a plaintiff must find elsewhere a money mandating source upon which to base a suit.").

In United States v. Mitchell, 445 U.S. 535 (1980), the United States Supreme Court found no money mandating statute and dismissed plaintiffs' case. There, individual allottees of land in Indian reservation sued the Government to recover damages for alleged mismanagement of timber resources found on the reservation in violation of the General Allotment Act ("Act") of 1887. The Act of 1887 authorized the President to allot to each Indian residing on a reservation, specified acreage of agricultural and grazing land within the reservation. The Court concluded that while Section 5 of the Act provided that the United States would hold land "in trust" for Indian allottees, the Act created only a limited trust relationship, and did not confer a right to recover money damages against the United States. Id.

In contrast, the United States Court of Appeals for the Federal Circuit Court found that a statute that enabled Secretary of a military branch to authorize disability retirement pay for service members on active duty was money-mandating – where service member *was entitled to compensation if requirements of statute* (emphasis added) were met, i.e., when Secretary determined that service member was unfit for duty because of physical disability, and that disability was permanent and stable and was not result of member's intentional misconduct or willful neglect. *See* Fisher v. United States, 402 F.3d 1167 (Fed. Cir. 2005).

**2.      The BSA and Title 31 Regulations and Statutes Are Not Money Mandating**

Plaintiffs filed suit after the United States assessed civil FBAR penalties pursuant to the BSA codified in 31 USC § 5311 *et. seq.*   The BSA requires taxpayers to report annually to the IRS any financial interests they have in foreign financial accounts by filing a completed FBAR with the Department of the Treasury, and provides for the imposition of civil penalties for failure to file the requisite forms.  Id.    The issue is whether the statutes and regulations comprising the BSA is a money mandating source for purposes of CFC jurisdiction.

A statute which possesses a monetary character and requires a non-discretionary purpose is more likely to be viewed as money mandating.  See Mitchell, 463 U.S. at 218 defining a monetary character as one which "…can fairly be interpreted as mandating compensation by the Federal Government for damages the plaintiff sustained."  While it may be argued that the BSA possesses a monetary character, *none* of the statutes or regulations in the BSA provides express authority for compensation by the federal government for damages sustained by a taxpayer, required for CFC jurisdiction.  31 USC § 5311 *et. seq.*    Instead, the BSA clears the path for the government to impose and enforce the FBAR penalties through lawsuit or through administrative offset, while omitting any authority or guidance for taxpayer to challenge the FBAR assessment. *See* 31 USC § 5321(a)(7) (providing statutory authority for the government to liquidate the penalty to a judgment);  31 USC § 3716 (authorizing administrative offsets for a debt owed the government).    Clearly, the BSA does not include the requisite money mandating source needed for CFC jurisdiction.

### 3. The Due Process Clause is Not a Money Mandating Statute

While plaintiffs have alleged a due process violation under the Fifth Amendment of the United States Constitution in their Complaint, it is well settled that the Due Process Clause does not authorize payment of money damages (and no money mandating source). Smith v. U.S., 709 F.3d 1114 (C.A.Fed.2013)("The Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money, and thus do not provide a cause of action under the Tucker Act."); Austin v. United States, 118 Fed. Cl. 776 (2014) ("The Court of Federal Claims does not possess jurisdiction to consider claims arising under the Due Process clauses of the Fifth and Fourteenth Amendments.").

### 4. Illegal Exaction Claims Require a Money Mandating Statute

An illegal exaction is money "improperly paid, exacted, or taken from the claimant in contravention of the Constitution." *See* Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 605 (1967). The prototypical illegal exaction claim is a tax refund suit alleged taxes have been improperly collected or withheld by the government. Kipple v. United States, 102 Fed. Cl. 773, 777 (2012). Although the CFC ordinarily lacks jurisdiction over due process claims under the Tucker Act, cases have held that the CFC does have jurisdiction over illegal exaction claims when the exaction is based upon an asserted statutory power. Gahagan v. U.S., 72 Fed.Cl. 157 (2006); Aerolineas Argentinas v. United States, 77 F. 3d 1564, 1573 (Fed. Cir. 1996).

However, the foregoing does not dispense with the critical inquiry as to whether the BSA is a money mandating statute sufficient for CFC jurisdiction. While some decisions have seemingly ignored the requirement of a money mandating statute for illegal exaction claims (*See* Figueroa v. United States, 57 Fed. Cl. 488, 495-496 (2003)), others have espoused a more stringent standard, but one that is still broader than simply requiring a money mandating source

of law.  <u>Norman  v. United States</u>, 429 F. 3d 1081 (Fed. Cir 2005).    In <u>Starr International</u>

<u>Company, Inc. v. United States</u>, 121 Fed. Cl. 428 (2015), the United States argued that the CFC

lacked jurisdiction over plaintiff-Starr's case because Section 13(3) of the Federal Reserve Act

("FRA") was not a money mandating statute.    After referencing the disparity in court decisions

regarding the jurisdictional requirement of a money mandating source in illegal exaction case

(Id. at 464-465), the <u>Starr</u> court acknowledged the [money mandating source] requirement,

holding that the FRA provision under which the government issued an emergency loan to

corporation *was a money mandating source of law*.  <u>Starr</u>, 121 Fed. Cl. at 428.

      Given the range of court cases regarding the necessity (or not) of a money mandating

source, plaintiffs contend that the issue of whether or not the BSA is money-mandating, for

purposes of CFC jurisdiction, is too uncertain to render the CFC an 'adequate court remedy'.

      Plaintiffs are cognizant of the recent case of <u>United States v. Norman</u>, 126 Fed. Cl. 277

(April 2016), where plaintiff-Norman filed a complaint seeking refund of a penalties under the

BSA - as monies illegally exacted.  True to its modus operandi, the United States filed a motion

to dismiss, arguing that the CFC did not have jurisdiction over the refund suit.  The United States

argued (unsuccessfully) that pursuant to 13 USC § 1355, the district courts – and not the CFC -

held exclusive jurisdiction over cases involving penalties.    <u>Id</u>. at 278-279.   The CFC rejected

the government's argument and held that the CFC retained jurisdiction over the refund penalty

case.  <u>Norman</u>, 126 Fed. Cl. 277.

      However, <u>Norman</u> is not dispositive of whether 1) a money-mandating source is required

for illegal exaction cases; or 2) the BSA is a money mandating source sufficient for CFC

jurisdiction.  Firstly, the government did not raise (and the court did not address) the foregoing

issues, therefore, the matter remains unsettled.    Instead the court premised (without discussion

of the BSA) its jurisdiction on the basis of plaintiff's illegal exaction claim and (in part) the fact that plaintiff had fully paid the penalties assessed under the BSA. Norman, 126 Fed. Cl. at 281. ("This case does not involve a forfeiture action, it does not involve criminal convictions, and it does not implicate the government's efforts to recover funds, as the plaintiff has already paid the penalty at issue, *in full.*" (emphasis added)).

Secondly, and since the Norman court specifically referenced full payment of the penalties as a factor in finding CFC jurisdiction, it is uncertain whether partial payment of the penalties assessed under the BSA would alter the court's finding of jurisdiction. The argument remains that plaintiffs are not required to pay the full assessment in non-tax cases. *See* Flora v. United States, 362 U.S. 145 (1960), holding that a taxpayer had to pay the full amount of the tax, penalties and interest to maintain an action for refund of income tax under Title 26 of the United States Tax Code.

The United States asks the court to dismiss plaintiffs' case on the basis that plaintiffs can file suit in the CFC. As set forth herein, and given the vast uncertainties as to the CFC's jurisdiction over BSA illegal exaction cases, plaintiffs have no assurance of alternative court remedy in the CFC under 28 USC § 1491.

**B.      28 USC § 1346 (a)(2) DOES NOT PROVIDE PLAINTIFFS WITH ADEQUATE COURT REMEDY**

The United States further argues that plaintiffs have adequate remedy in the district court under 28 USC 1346 § (a)(2), because they can pay an amount up to $10,000 and file for refund. Def. Brief, pg. 5, ECF No. 16. Plaintiffs disagree.

The Little Tucker Act provides concurrent jurisdiction to the district courts and the Court of Federal Claims over suits against the United States for $10,000 or less founded upon "the Constitution, or any Act of Congress, ... or upon any express or implied contract with the United States" and waives sovereign for these claims." 28 U.S.C. § 1346(a)(2); Mitchell, 463 U.S. at, 212–218. However, the Tucker Act empowers federal district courts to award damages but *not* (emphasis added) to grant injunctive or declaratory relief. Richardson v. Morris, 409 U.S. 464, 465–66 (1973); Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 858–59 (Fed.Cir.1992). *See also* United States v. Sherwood, 312 U.S. 584, 589–91 (1941). ("...the [Tucker Act] limitation on the court's authority applies to district courts as well as the Court of Federal Claims because a district court, when exercising jurisdiction under the Little Tucker Act, in effect sits as the Court of Federal Claims, which does not have general equitable powers.").

The United States has assessed plaintiffs a total of $51,000 in non-willful FBAR civil penalties under 31 USC § 5321(a)(5) for not filing an FBAR informational return. Even assuming plaintiffs paid an amount not exceeding $10,000 and filed suit under 28 USC § 1346 (a)(2), such suit would not provide plaintiffs with adequate court remedy. If the government declined to answer or counterclaim, plaintiffs could theoretically obtain a default judgment for refund of the $10,000. *See* Federal Rules of Civil Procedure ("FRCP") 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). However, since the Tucker Act does not empower the district court to render declaratory relief, and a default judgment is not given preclusive effect under the doctrine of collateral estoppel, plaintiffs would remain liable for the balance of the civil penalty assessment. In re Cassidy, 892 F.2d 637, 640 n. 1 (7th Cir.). (A default judgment is not given preclusive effect under the

doctrine of collateral estoppel because no issue has been "actually litigated" in the prior action.).

As such the United States would be able to offset any federal benefits to which plaintiffs may be entitled, including social security benefits.  31 USC § 3716 (authorizing administrative offset of any debt owed the government).

As articulated above, 28 USC 1346 (a)(2) does not provide plaintiffs with adequate court remedy.

## C.     WAITING FOR THE UNITED STATES TO FILE SUIT IS NOT AN ADEQUATE COURT REMEDY

The United States appears to suggest that waiting for the government to sue plaintiffs is another court remedy.  *See* Def. Brief, pg. 5, ECF No. 16  ("In addition, if the Kenteras decline to pay and file suit for refund, the United States could commence its own suit to reduce the assessments to judgment and collect the penalties pursuant to 31 USC § 5321 (b)(2).")     This suggestion is ludicrous because as the United States is well aware, the government may collect on the entire FBAR penalty assessments from plaintiffs without the burdens of a lawsuit. Pursuant to 31 USC § 3716, the Treasury Department has the statutory authority to collect delinquent non-tax debts owed (including the FBAR assessments) to the federal government by offsetting payments made by other federal agencies. See 31 USC § 3716; 31 C.F.R. § 285.5(a)(1).  All federal payments, (including social security benefits) except for a few delineated exceptions, are subject to administrative offset unless "expressly prohibited by Federal statute."  See 31 C.F.R. § 285.5(e)(1), (2)(v).

Since the United States is not required to bring suit in order to collect the FBAR assessment, the option of waiting for the United States to file suit is clearly not an adequate remedy.

**D.     VENUE IS IN THE EASTERN DISTRICT OF WISCONSIN**

The United States further contends that (even) if jurisdiction lies in the district court, the proper district for this action would be in the Northern District of California.

Plaintiffs dispute this contention. The general venue statute, 28 U.S.C.A. 139(e), allows the person suing an agency or agency official or the United States, to sue where he (plaintiff) resides, where the cause of action arose, or where the defendant resides.  In pertinent part and as amended Section 1391(e) provides that:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or *the United States (emphasis added)* may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

In the present case, the cause of action and substantial part of the events or omissions giving rise to this claim, namely the actions of the IRS Examiner who was responsible for the assessment of the FBAR penalties in question, took place in Milwaukee, Wisconsin.  Since the IRS, (an executive agency of the United States) incorrectly assessed FBAR penalties against the plaintiffs' in Milwaukee, Wisconsin and the IRS violated the plaintiffs' due process rights in Milwaukee, Wisconsin, the actions of the IRS should be reviewable in this Court. Therefore, the proper venue for this action is in the Eastern District of Wisconsin.    28 USC 1391 § (e).

**E.     CONCLUSION**

Plaintiffs do not have adequate court remedy and the United States has waived its sovereign immunity under the Section 702 of the APA.

The Court should therefore DENY the United States' motion to dismiss and retain venue in the Eastern District of Wisconsin.

Dated: December 21, 2016           */s/ Anthony V. Diosdi*_____

                                               Anthony V. Diosdi
                                               Moskowitz, LLP
                                               180 Montgomery Street, #1950
                                               San Francisco, CA 94104
                                               adiosdi@moskowitzllp.com
                                               Tel: 415.394.7200
                                               Fax: 451.398.6501

                                               Attorney for Plaintiffs