UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

MILO and LOIS KENTERA,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 2:16-cv-01020-JPS

# UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs filed this action seeking judicial review under 5 U.S.C. § 702 of the Administrative Procedures Act ("APA") of the IRS's assessments of FBAR penalties.[1] The United States moved to dismiss on the ground that there has been no waiver of sovereign immunity under the APA in that the plaintiffs have another adequate court remedy available to them.[2] In their response to the Government's motion, the plaintiffs argue that they have no other adequate court remedy. As stated in the United States' supporting brief and further explained below, the plaintiffs can challenge the penalty assessments in federal court by paying all or a portion of the penalties and filing a refund suit under either the Little Tucker Act, 28 U.S.C. § 1346(a)(2), or the Tucker Act, 28 U.S.C. § 1491. The plaintiffs can also litigate the penalties under 28 U.S.C. § 1355(a) in the district court. These constitute adequate court remedies that

---

[1] Report of Financial Bank and Financial Accounts required under the Bank Secrecy Act, 31 U.S.C. § 5311, *et seq.*

[2] The APA provides, *inter alia*, that government agency action "for which there is no other adequate remedy in court are subject to judicial review." 5 U.S.C. § 704.

foreclose this suit under the APA. Regardless, venue is not proper in the Eastern District of Wisconsin.

       *1.*      *The plaintiffs can challenge the assessments in U.S. District Court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) or 28 U.S.C. § 1355(a).*

The penalty assessments against the plaintiffs total $51,000. However, there is not one single assessment against them for that amount. Instead there are separate assessments against Milo Kentera for each of the years 2006-2010 (*i.e.,* five separate assessments) and separate assessments against Lois Kentera for those same years (*i.e.,* five separate assessments against her). Each of the total 10 assessments is separate and relates to a discrete failure to file an FBAR. *See* 31 U.S.C. § 5321(a)(5). None of the assessments exceeds $10,000. Under these facts, plaintiffs could pursue a remedy in federal district as jurisdiction would be proper under 28 U.S.C. § 1355(a) or the Little Tucker Act.

Section 1355 provides that federal district courts have original jurisdiction "of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade." 28 U.S.C. § 1355(a). The plaintiffs could pay the assessments and file a refund suit challenging them pursuant to § 1355. By its terms, this statute would apply inasmuch as the plaintiffs would be seeking a recovery of a penalty.

Otherwise, the Little Tucker Act allows plaintiffs to challenge penalty assessments in U.S. District Court. The Little Tucker Act provides that where the United States is the defendant, the district courts have "original jurisdiction, concurrent with the United States Court of Federal Claims of":

> [a]ny other [*i.e.,* non-tax] civil action or claim against the United
> States, not exceeding $10,000 in amount, founded either upon the
> Constitution, or an Act of Congress, or any regulation of an

executive department, or upon any express or implied contract with
the United States, or for liquidated or unliquidated damages in
cases not sounding in tort * * *.

28 U.S.C. § 1346(a)(2). This provision operates both as a jurisdictional grant and a waiver of sovereign immunity for monetary claims premised on other sources of law. *See United States v. Bormes*, 133 S.Ct. 12, 16 (2012).

The plaintiffs can, if they desire, pay up to $10,000 to the United States on *each* of the FBAR assessments and have their challenge litigated in district court. *See Pasha v. United States*, 484 F.2d 630, 632 (7th Cir. 1973) (where penalties are unlawfully imposed, suit under § 1346(a)(2) is appropriate remedy). Indeed, the Federal Circuit—which has exclusive jurisdiction over appeals where the district court's jurisdiction is based on the Little Tucker Act, *see* 28 U.S.C. § 1295(a)(2) —has held that district courts have jurisdiction under the Little Tucker Act over suits against the Government for return of a civil penalty equal to or less than $10,000. *See Trayco, Inc. v. United States*, 994 F.2d 832, 836 (Fed. Cir. 1993) (district court had jurisdiction under Little Tucker Act for importer's suit for refund of $7,500 customs penalty). Under either 28 U.S.C. § 1355(a) or the Little Tucker Act the plaintiffs have an adequate judicial remedy to litigate the penalty assessments.[3] This adequate court remedy available to the plaintiffs forecloses review in the instant action under the Administrative Procedures Act.

---

[3] In *Norman v. United States*, 126 Fed. Cl. 277 (2016), the Government argued that FBAR refund suits should be brought in district court pursuant to 28 U.S.C. § 1355(a) because that statute provides a specific and comprehensive scheme for judicial review of penalty refund cases and thus preempts the Tucker Act (and by extension, the Little Tucker Act). The court in *Norman* rejected the Government's argument and held that it had jurisdiction under the Tucker Act for such cases. The Court in this instant matter does not need to determine which statute would provide jurisdiction because under any of them the plaintiffs would have an adequate court remedy to challenge the assessments.

The plaintiffs acknowledge that they may bring a refund suit in district court (at least under the Little Tucker Act) but argue that such a suit would not fully dispose of all the assessments, and thus would not be an adequate court remedy. The plaintiffs misunderstand the penalty assessments and their rights. The $10,000 limitation on Little Tucker Act claims is applied on a claim by claim basis; multiple claims are not aggregated. *Baker v. United States*, 722 F.2d 517, 518 (9th Cir.1983); *United States v. Gonzalez*, 728 F. Supp. 2d 1077, 1092 (N.D. Cal. 2010); *Jones Motor Co. v. Teledyne, Inc.*, 690 F. Supp. 310, 316 (D. Del. 1988) (citing cases). In the present case, as stated above, the IRS made 10 separate assessments against the plaintiffs, none of which exceeds $10,000. If the plaintiffs pay all or some of the assessments and bring a refund suit, each year for each plaintiff will be a separate claim. Because neither plaintiff was assessed more than $10,000 in any year, no claim will exceed the amount limitations under the Little Tucker Act. Thus, contrary to plaintiffs' concern, all assessments could be fully adjudicated in the district court under the Little Tucker Act.

In addition, the plaintiffs' contention (doc. 17 at pp. 10-11) that filing suit in district court does not provide an adequate court remedy because the Government could deliberately default in a refund suit by a partially-paying plaintiff, thus precluding any collateral estoppel effect, and then administratively collect the unpaid balance of the assessments, is entirely theoretical and also incorrect. Rule 55 of the Federal Rules of Civil Procedure provides a special rule for default judgments against the United States. Under Rule 55(d), a default judgment may be entered against the Government only if the claimant establishes a claim or right to relief by evidence that satisfies the court. In the unlikely event that the United States would fail to answer a suit brought by the Kenteras, the Kenteras would still have to satisfy the court that they deserve a refund. If they do satisfy the court, and default judgment is entered, collection by the United

States would be inappropriate. *Briggs v. United States*, 564 F. Supp. 2d 1087, 1093 (N.D. Cal. 2008); *O'Connell v. Mills*, case no. 13-15124, 2014 U.S. Dist. LEXIS 12062 (E.D. Mich. Jan. 31, 2014).

As noted by the court in *Briggs* in response to the argument that a refund suit does not provide the requested injunctive or prospective relief, "Indeed, in the instant case, a single uncomplicated payment of money would provide [the plaintiff] with an entirely adequate remedy. No prospective relief would be required and there would be no ongoing relationship to monitor and referee. In the instant action, once Plaintiff Briggs was paid, it would be unlikely (and inappropriate) for defendants to continue with wrongful offsets." *Briggs*, 564 F. Supp. 2d at 1093. The same reasoning applies here. Either the Kenteras had reasonable cause for their failure to file FBARs, or they did not. If the court is satisfied that a particular failure was due to reasonable cause, the Government would not, and should not, continue to collect the penalty. A refund suit in district court furnishes the plaintiffs with an adequate court remedy that forecloses jurisdiction in this matter under the APA.

### 2. *The plaintiffs may challenge the penalty assessments in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491.*

If penalties are greater than $10,000 and 28 U.S.C. § 1355 does not confer exclusive jurisdiction, like the Little Tucker Act applicable to District Court, the Tucker Act vests jurisdiction in the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *Norman v. United States*, 126 Fed. Cl. 277 (2016). The Tucker Act provides a waiver of sovereign immunity for certain actions seeking monetary relief against the United States in the

5

Court of Federal Claims ("CFC"). "The actions for which the Tucker Act waives sovereign immunity are actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating constitutional provisions, regulations, or executive orders." *Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003).

As pertinent here, a Tucker Act claim may be made for recovery of monies that the government has required to be paid contrary to law. A so-called "illegal exaction" claim may be maintained when "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum" that "was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quoting *Eastport Steamship Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967)). "The refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages" and is a quintessential illegal exaction claim. *Trayco,* 994 F.2d at 837-38. If the plaintiffs were to pay the assessments (or a portion thereof), their potential suit challenging the assessments and seeking a refund in the CFC would be considered an illegal exaction claim seeking a return of all or part of a sum they would allege was improperly paid or exacted from them by the United States pursuant to an Act of Congress (31 U.S.C. § 5321). *See Eastport Steamship*, 372 F.2d at 1007 (describing illegal exaction claims under the Tucker Act). Although the United States has taken the position that 28 U.S.C. § 1355 places jurisdiction of FBAR penalty refund suits in district court, not the CFC, the Court of Federal Claims has determined, in an interlocutory order, that it has jurisdiction in such

FBAR penalty refund situations. *Norman*, 126 Fed. Cl. 277. The plaintiffs thus have another alternative remedy to the instant lawsuit according to the CFC itself.[4]

The plaintiffs acknowledge in their opposition brief that the CFC "does have jurisdiction over illegal exaction claims when the exaction is based upon an asserted statutory power." (Doc. 17 at p. 7 [citations omitted].) Here, the Government's exaction would be based on the statutory Bank Secrecy Act. However, the plaintiffs argue that the Bank Secrecy Act is not a money-mandating statute and that a money-mandating statute is necessary for jurisdiction under the Tucker Act. Their argument is incorrect.[5] As recognized by the Supreme Court in *United States v. Testan*, 424 U.S. 392 (1976), a Tucker Act claim for damages against the United States based upon a statute may be either a claim under a money-mandating statute *or* a claim for money improperly exacted or retained. *Id.* at 401-02. "A claimant must rely either on a statute that mandates payment of money from the government to the claimant or on an illegal exaction, that is, a payment to the government by the claimant that is obtained without statutory authority." *Aerolineas Argentinas*, 77 F.3d at 1579.

---

[4] As mentioned in note 3, *supra*, the Government argued in *Norman* that FBAR penalty refund suits should be brought in district court (rather than the CFC) under 28 U.S.C. § 1355. In an interlocutory decision, the court in *Norman* held that the CFC had proper jurisdiction under the Tucker Act but noted that "there is obvious tension between § 1355(a) and the scope of Tucker Act jurisdiction" and "that substantial ground for difference of opinion on this controlling question of law exists." *Id.*, 126 Fed. Cl. at 281. The United States did not appeal the interlocutory order. Again, this Court only needs to determine that the plaintiffs have an adequate alternate judicial remedy. The Court does not need to decide which of the remedies is best.

[5] The Little Tucker Act has a $10,000 jurisdictional limit. There is no jurisdictional dollar amount for suit brought under the Tucker Act in the Court of Federal Claims. Except for the dollar amount, the jurisdiction conferred by the Tucker Act and Little Tucker Act is identical. To the extent that a claim under the Tucker Act requires a money-mandating statute, a claim under the Little Tucker Act would also. Thus, the following discussion regarding an illegal exaction claim and a money-mandating statute is applicable to jurisdiction in both the CFC under the Tucker Act and the district court under the Little Tucker Act.

The plaintiffs cite the opinion in *Starr International Company, Inc. v. United States*, 121 Fed. Cl. 428 (2015), which includes a discussion regarding whether an illegal exaction claim must also be grounded in a money-mandating statute. As noted in *Starr*,

> In addressing this jurisdictional problem for illegal exaction claims, some decisions have dispensed with the requirement for a money-mandating statute, seemingly embracing the concept that the Government should not escape responsibility for its unauthorized actions based on a jurisdictional loophole. *See Figueroa v. United States*, 57 Fed. Cl. 488, 496-96 (2003) ("In the context of an illegal exaction, the court has jurisdiction regardless of whether the provision relied upon can be reasonably construed to contain money-mandating language."); *Bowman v. United States*, 35 Fed. Cl. 397, 401 (1996) ("In illegal exaction cases, in contrast to other actions for money damages, jurisdiction exists even when the provision allegedly violated does not contain compensation mandating language."); *Aerolineas Argentinas*, 77 F.3d at 1573 ("[A]n illegal exaction has occurred when 'the Government has the citizen's money in its pocket.' Suit can then be maintained under the Tucker Act to recover the money exacted.") (quoting *Clapp*, 127 S.Ct. at 513, 117 F. Supp. at 580); *Auto. Club Ins. Ass'n v. United States*, 103 Fed. Cl. 268, 273 (2012) (Where an illegal exaction is alleged, the Tucker Act "enables suit even in the absence of a money-mandating statute.").

*Starr*, 121 Fed. Cl. at 464-65.

The *Starr* court further noted that some later decisions have taken a slightly stricter view and indicate that while illegal exaction claims do not need to show an explicit money mandate statute, a claimant must demonstrate that the statute or provision underlying the exaction provides, either expressly or by necessary implication, that the remedy for its violation entails a return of money unlawfully exacted. *Id.*, at 465. The court in *Starr* observed that the leading case in this line is *Norman v. United States*, 429 F.3d 1081 (Fed. Cir. 2005). In *Starr*, the court was not compelled to adopt a particular view because even "under the more demanding test of *Norman*, the words 'by necessary implication' would lead to a finding of jurisdiction in this case." *Starr*, 121 Fed. Cl. at 465. Other recent decisions have followed the slightly stricter view from *Norman* and stated that the statute resulting in the exaction must also provide "either expressly or by necessary implication" that the remedy for its violation entails a return of money

8

unlawfully exacted. *See, e.g., Greene v. United States*, 124 Fed. Cl. 636, 641 (2015); *N. California Power Agency v. United States*, 122 Fed. Cl. 111, 115-16 (2015); *Dourandish v. United States*, 120 Fed. Cl. 467, 474, *aff'd*, 629 Fed. Appx. 966 (Fed. Cir. 2015).

Thus, even under the stricter view of the Federal Circuit in *Norman*, the lack of express money-mandating language in a statute does not defeat a plaintiff's illegal exaction claim if the statute necessarily implies that the remedy for its violations entails a return of wrongfully exacted funds. In determining if a statute necessarily implies that the remedy for its violation entails a return of money unlawfully exacted, the CFC has consistently interpreted statutes authorizing the government to exact a payment to implicitly provide for return of payment as the remedy for the government's violation of the statute. The court in *Starr* held that § 13(3) of the Federal Reserve Act implicitly provided that the remedy for a violation of the Act is a return of funds. *Starr*, 121 Fed. Cl. at 465. This implication was found simply because "the Government should not be permitted to insulate itself from liability by arguing that Section 13(3) is not money-mandating. If this were true, the Government could nationalize a private corporation, as it did to AIG, without fear of any claims or reprisals. Section 13(3) does not contain express 'money-mandating' language, but 'by necessary implication,' the statute should be read to allow the shareholders' cause of action here." *Id.*

The court in *N. California Power Agency* held that the remedy for the government's violation of a section of the Central Valley Project Improvement Act is a return of money paid over to the government. 122 Fed. Cl. at 116. Similar to its opinion in *Starr*, the court supported this conclusion simply by noting that otherwise, the government could assess any fee or payment it wanted from a plaintiff, and as long as the government was acting pursuant to a statute that does not expressly require compensation to the plaintiff for wrongful or illegal action by the

9

government, the plaintiff would have no recourse for recouping the overpaid money. *Id.* As the court further noted, "[o]verpayment claims are one of the quintessential illegal exaction claims, and the Court has always had jurisdiction under the Tucker Act to hear such claims." *Id.* (internal citations omitted). The court in *Kipple v. United States*, 102 Fed. Cl. 773, 777 (2012) simply stated that when violation of a statute results in an illegal exaction, the remedy is a return of the funds collected.

With respect to the instant case, 31 U.S.C. § 5321 (of the Bank Secrecy Act) authorizes the government to impose a penalty for failure to file an FBAR, unless the failure was due to reasonable cause. If there was no failure to file or if the failure was due to reasonable cause, there should be no penalty and any money the government receives as payment of the penalty is illegally exacted in violation of the statute. The remedy for this violation (by necessary implication) is a return of the funds. Therefore, the Tucker Act on its face provides jurisdiction over a refund suit for the money illegally exacted under 31 U.S.C. § 5321 regardless of whether the Court determines that a money-mandating statute is necessary for CFC jurisdiction. The plaintiffs may bring a refund action in the Court of Federal Claims in accordance with the interlocutory decision in *Norman*, 126 Fed. Cl. 277. They, thus, have another potential adequate court remedy, and may not bring this suit under § 704 of the APA.

### 3. *Proper venue for this action is in the Northern District of California.*

The plaintiffs filed this suit in the Eastern District of Wisconsin solely because the IRS employee who determined that the assessments were proper happens to work in Milwaukee. This action belongs in the Northern District of California. It was in the San Francisco Bay Area where the plaintiffs failed to properly file the subject FBAR reports. It was that failure that resulted in the penalty assessments. The plaintiffs allege in the complaint that they had

10

reasonable cause for their failure to file the reports. The facts surrounding the alleged reasonable cause – chiefly, reliance on their CPA return preparers – occurred in the Northern District of California. The plaintiffs and their return preparers live and work in that District. The actions of the Milwaukee IRS agent are not relevant to the plaintiffs' reasonable cause allegations. If jurisdiction were proper (or, if sovereign immunity were waived), the proper judicial district for this action would be the Northern District of California. 28 U.S.C. §§ 1391(b) and (c)(1), 1395(a), and 1402(a)(1).

### 4. *Conclusion.*

The plaintiffs brought this action under the APA (5 U.S.C. §§ 701-706).[6] Judicial review under the APA is limited to situations where the person has "no other adequate remedy in a court." 5 U.S.C. § 704. Because the plaintiffs have an adequate alternate court remedy they cannot maintain this action against the United States. "Sovereign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed." *Bormes*, 133 S.Ct. at 16 (internal quotations omitted). The United States has not unequivocally expressed consent to this suit and the complaint fails to state a claim upon which relief can be granted. It should be dismissed. If for some reason jurisdiction is deemed proper, the case should be transferred to the proper judicial district for venue purposes, the Northern District of California.

Dated: January 11, 2017

---

[6] The plaintiffs also filed this action under the Declaratory Judgment Act, 28 U.S.C. §§2201-2201, seeking a declaratory judgment that the penalty assessments were null and void. As explained in the Government's opening brief (doc. 16 at pp. 5-6), the Declaratory Judgment Act does not waive sovereign immunity, it "merely grants an additional remedy where jurisdiction already exists in the court." *Brownell v. Ketcham Wife & Mfg. Co.* 211 F.2d 121, 128 (9th Cir. 1954). The plaintiffs do not dispute this in their response.

Respectfully submitted,

GREGORY J. HAANSTAD
United States Attorney

 /s/ *Martin M. Shoemaker*
MARTIN M. SHOEMAKER
U.S. Dept. of Justice, Tax Division
P.O. Box 7238
Washington, DC  20044
202-514-6491 (phone)
202-514-6770 (fax)
Martin.m.shoemaker@usdoj.gov