# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MILO KENTERA and LOIS KENTERA,<br><br>　　　　　　　　　　　Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Defendant. | Case No. 16-CV-1020-JPS<br><br><br>**ORDER** |

　　　　Plaintiffs, Milo and Lois Kentera, filed a complaint against the United States, alleging violations of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, and their due process rights under the Fifth Amendment. (Docket #1). This action arises from Plaintiffs' failure to file a Report of Foreign Bank and Financial Accounts ("FBAR") for several tax years despite having assets that should have been identified in that form. The Internal Revenue Service assessed civil penalties against Plaintiffs for these failures. Plaintiffs challenge those penalties, arguing that they are void because Plaintiffs had reasonable cause for their failure to file the FBARs. They further assert that the IRS' decision to impose the penalties was arbitrary and capricious, in violation of the APA. The government moved to dismiss the complaint, asserting that it has not waived its sovereign immunity with respect to Plaintiffs' claims and, even if it had, venue is not proper in this District. (Docket #15). The motion is fully briefed, and, for the reasons stated below, it will be granted on the basis of sovereign immunity.[1]

---

[1] Because the Court finds that the complaint should be dismissed because of the government's sovereign immunity, it need not reach the question of whether this District is the proper venue for the suit.

1.   **APPLICABLE LAW**

   1.1   **Motion to Dismiss for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which fail to state a viable claim for relief or for improper venue. Fed. R. Civ. P. 12(b)(3) and (6). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing Plaintiffs' complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81.

   1.2   **Sovereign Immunity**

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Waivers of sovereign immunity are narrowly construed because the immunity protects the public fisc. *See West v. Gibson*, 527 U.S. 212, 222 (1999); *Nelson v. Miller*, 570 F.3d 868, 883–84 (7th Cir. 2009). The court must strictly construe the scope of any alleged waiver in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996). A court may "not enlarge the waiver beyond what the language [of the statute] requires." *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (internal citations and quotation marks omitted). Consent to suit cannot be implied, and ambiguities are construed in favor of immunity. *See United States*

*v. Nordic Village*, 503 U.S. 30, 34 (1992). In this Circuit, a sovereign immunity defense, if sustained, shows that the plaintiff failed to state a claim; it is not a matter affecting the court's subject-matter jurisdiction. *Collins v. United States*, 564 F.3d 833, 837–38 (7th Cir. 2009). The plaintiff, as the party seeking to breach the government's sovereign immunity, bears the burden to show that a waiver exists. *See Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002); *Cole v. United States*, 657 F.2d 107, 109 (7th Cir. 1981).

## 2. RELEVANT FACTS

The relevant facts are drawn from Plaintiffs' complaint. The Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*, requires U.S. citizens to keep records and file reports when they "mak[e] a transaction or maintai[n] a relation with a foreign financial agency." 31 U.S.C. § 5314(a). The report must be made in an FBAR, which is IRS Form TD F 90-22.1. The FBAR must be filed on or before June 30 of the year following the calendar year for which the report is made. If the individual fails to comply with the requirements of Section 5314, the BSA provides that civil penalties may be imposed. *Id.* § 5321(a)(5). For non-willful violations, the penalty cannot exceed $10,000. *Id.* § 5321(a)(5)(B)(I).

In 1984, Plaintiff Milo Kentera inherited money located in a foreign bank account at Banque Cantonale de Geneve ("BCGE"). He added his wife's name to the BCGE account shortly thereafter. The balance in the account increased dramatically in 2007 due to the sale of Milo Kentera's parents' property in Montenegro, certain proceeds of which were distributed to Milo and deposited in the BCGE account.

Plaintiffs have consistently disclosed the BCGE account on their federal income tax returns since 1984. However, in 2006 their accountant failed to prepare or file an FBAR in connection with their federal income tax

return. Their accountant for tax years 2007, 2008, and 2009 made the same error, despite having information from which he could have discovered the existence of the BCGE account. In 2010, a third accountant acknowledged the existence of the BCGE account in Plaintiffs' return, but again seems to have failed to prepare or file an FBAR.

In February 2011, the IRS announced a federal amnesty program for taxpayers with foreign bank accounts—the 2011 Offshore Voluntary Disclosure Initiative ("OVDI"). To participate, taxpayers were required to amend their tax returns and file FBARs for tax years 2003–2010. OVDI participants were required to pay all delinquent taxes, interest, and penalties, and, under this program, taxpayers were subject to a 25% penalty on the highest aggregate account balance on their previously undisclosed accounts during those years.

In around September 2011, Plaintiffs applied to the OVDI program. They amended their tax returns for 2006–2010 to include omitted income and filed completed FBARs for 2005–2010. In August 2013, the IRS provided Plaintiffs with a Form 906, *Closing Agreement on Final Determination Covering Specific Matters* (the "Closing Agreement"). The Closing Agreement provided, in relevant part, that Plaintiffs would be liable under the tax code for a miscellaneous penalty of $90,092. Plaintiffs withdrew from the OVDI program the next month.

After Plaintiffs withdrew from the program, IRS agent Kimberly Nguyen ("Nguyen"), who works in Milwaukee, examined the matter and recommended that Plaintiffs be assessed non-willful FBAR penalties pursuant to 31 U.S.C. § 5321(a)(5). The amounts of the penalties were as follows:

(1) Lois Kentera: $500 for calendar year 2006; and $2,500 per year for calendar years 2007, 2008, 2009, and 2010, for a total penalty of $10,500; and

(2) Milo Kentera: $500 for calendar year 2006; and $10,000 per year for calendar years 2007, 2008, 2009, and 2010, for a total penalty of $40,500.

On September 17, 2014, the government mailed each Plaintiff a letter advising that the IRS was proposing assessment of these penalties.

On or about December 14, 2014, Plaintiffs' counsel communicated with Nguyen, protesting the proposed penalties. He also had a conference with her sometime thereafter. By letter dated April 22, 2015, the government mailed Milo Kentera a letter of an "appeals determination," upholding the IRS' proposed FBAR penalties. A similar letter was sent to Lois Kentera on April 29, 2015.

In their complaint, Plaintiffs assert that the government was wrong to assess these penalties. First, Plaintiffs contend that the BSA prohibits the imposition of an FBAR penalty if the violation was "due to reasonable cause." 31 U.S.C. § 5321(a)(5)(B)(ii)(I). According to Plaintiffs, reasonable cause for their violations exists because the fault lay with their various accountants. The government disregarded this defense, and Plaintiffs believe this was a violation of their due process rights under the Fifth Amendment. Second, Plaintiffs allege that because the IRS wrongfully rejected their reasonable cause defense under the BSA, its assessment of the penalties was arbitrary and capricious, in violation of the APA. *See* 5 U.S.C. § 706(2)(A) (a district court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Plaintiffs

request that the Court find that the government abused its discretion in assessing these penalties and ask that the Court declare the penalties void.

**3.    DISCUSSION**

The government contends that Plaintiffs have failed to state any claims against it because it has not waived its sovereign immunity with respect to Plaintiffs' claims. The parties' dispute focuses on the APA, which provides a waiver of sovereign immunity when two prerequisites are met.[2] First, the action in question must "see[k] relief other than money damages and stat[e] a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." *See* 5 U.S.C. § 702. Second, the plaintiff must show that (1) review of the agency action in question is authorized by a substantive statute or (2) review is made of a "final agency action for which there is no other adequate remedy in a court." *Id.* § 704; *Bowen v. Massachusetts*, 487 U.S. 879, 891–93 (1988); *Consol. Edison of N.Y. v. U.S. Dep't of Energy*, 247 F.3d 1378, 1382 (Fed. Cir. 2001) ("The Supreme Court has explained that a litigant may invoke the APA as a waiver of sovereign immunity, thereby invoking district court jurisdiction, if the litigant can satisfy both. . .§ 702 and. . .§ 704.") (parentheticals omitted); *see also Blagojevich v. Gates*, 519 F.3d 370, 372 (7th Cir. 2008). Both parties agree

---

[2]The other two asserted jurisdictional bases for the suit—28 U.S.C. § 1331 and 28 U.S.C. § 2201—do not create waivers of the United States' sovereign immunity. *See* (Docket #16 at 3, 5–6). Plaintiffs admit as much with respect to Section 1331. (Docket #17 at 3). Further, while Plaintiffs do not expressly concede that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create a waiver of sovereign immunity, the Act "neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief." *See McCarthy v. Marshall*, 723 F.2d 1034, 1037 (1st Cir. 1983). As a result, the Act cannot itself work a waiver of sovereign immunity.

that none of the substantive law on which Plaintiffs rely contains a waiver of sovereign immunity. (Docket #16 at 4); (Docket #17 at 3).

Nevertheless, the government asserts that Plaintiffs have adequate remedies outside the instant suit. (Docket #16 at 4). In the government's view, Plaintiffs can pay some or all of the penalties and then file a refund suit under the Tucker Act, 28 U.S.C. § 1491, or the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *Id.* at 4–5. Such a suit would permit Plaintiffs to raise the reasonable cause defense that forms the basis of this action. *Id.* at 5. Alternatively, if Plaintiffs simply decline to pay the penalties, they could assert the reasonable cause defense during a suit brought by the government to reduce the penalties to judgment pursuant to 31 U.S.C. § 5321(b)(2). *Id.*[3]

Plaintiffs rejoin that the government's proposed alternative avenues are not adequate substitutes for APA review. (Docket #17). The availability of remedies under the Tucker Act and Little Tucker Act turn on different prerequisites, so the Court will treat them in turn.

### 3.1 The Tucker Act and Money Mandating Statutes

First, there is the Tucker Act, which established the Court of Federal Claims in order to provide a forum for certain monetary claims against the United States. Under the Tucker Act, the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States, founded either upon the Constitution, or any Act of Congress or any

---

[3]Plaintiffs believe that this is not a viable option because the government can recoup the penalties without litigation by offsetting payments made by other federal agencies, including Social Security benefits. (Docket #17 at 11); 31 U.S.C. § 3716; 31 C.F.R. § 285.5(a)(1). The government does not address Plaintiffs' position in its reply and therefore seems to have abandoned this argument. Because the Court finds that the Tucker Act and Little Tucker Act afford Plaintiffs an adequate alternative to a claim under the APA, the Court does not decide whether waiting for the government to sue them would also qualify.

regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *See* 28 U.S.C. § 1491 (a)(1). The Tucker Act waives the government's sovereign immunity for such actions. *United States v. Mitchell*, 463 U.S. 206, 212–18 (1983); *United States v. Testan*, 424 U.S. 392, 397–98 (1976). Thus, says the government, Plaintiffs could pay some of the penalties and seek a refund under the Tucker Act.

There is an additional wrinkle, however, since the Tucker Act only confers jurisdiction and itself creates no substantive rights. *Testan*, 424 U.S. at 398. As such, to assert a claim in the Court of Federal Claims under the Tucker Act, Plaintiffs would need a source of substantive law that creates for them a damages remedy. *Mitchell*, 463 U.S. at 216; *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). This is referred to as the requirement for a "money-mandating" source of law. *See Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action, a plaintiff must find elsewhere a money mandating source upon which to base a suit.").

According to Plaintiffs, neither the BSA nor the Due Process Clause of the Fifth Amendment qualify. (Docket #17 at 6–7). First, although the BSA provides the means for the government to enforce FBAR requirements, it says nothing about the taxpayer's ability to seek repayment of unauthorized penalties. (Docket #17 at 6). Second, the Due Process Clause of the Fifth Amendment has, as Plaintiffs point out, been flatly held not to be money mandating. *Id.* at 7; *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("The Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money, and thus do not provide a cause of action under the Tucker Act.").

Yet Plaintiffs acknowledge that this is not the end of the story. Rather, the Court of Federal Claims could hear Plaintiffs' claims—statutory, constitutional, or otherwise—under an "illegal exaction" theory. *Consol. Edison Co. of N.Y.*, 247 F.3d at 1384. An illegal exaction occurs when money is "improperly paid, exacted, or taken from the claimant" in violation of the Constitution or some statutory power. *See Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605 (1967). The classic illegal exaction claim is a tax refund suit alleging that taxes have been improperly collected or withheld by the government. *See, e.g., City of Alexandria v. United States*, 737 F.2d 1022, 1028 (Fed. Cir. 1984). As Plaintiffs admit, "[a]lthough the [Court of Federal Claims] ordinarily lacks jurisdiction over due process claims under the Tucker Act, cases have held that [it] does have jurisdiction over illegal exaction claims when the exaction is based upon an asserted statutory power." (Docket #17 at 7) (citing *Gahagan v. United States*, 72 Fed. Cl. 157, 163 (2006); *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996)). Here, that statutory power would be the BSA itself.

Plaintiffs argue, however, that even in illegal exaction cases, a money-mandating source of law is still required to create jurisdiction under the Tucker Act. (Docket #17 at 7–8) (citing *Starr Int'l Co., Inc. v. United States*, 121 Fed. Cl. 428, 464 (2015)). The government disagrees. It claims that either a money-mandating statute *or* an illegal exaction, but not both, are required to bring a claim in the Court of Federal Claims. (Docket #19 at 7) (citing *Aerolineas Argentinas*, 77 F.3d at 1579).

The Court need not resolve the parties' disagreement on this question because it finds that the BSA qualifies as money-mandating. To prove that a statute is money-mandating, it "must be such that [it] 'can fairly be interpreted as mandating compensation by the Federal Government for the

damage sustained.'" *Jones v. United States*, 122 Fed. Cl. 490, 508 (2015) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)); *Testan*, 424 U.S. at 401–02. The Court of Appeals for the Federal Circuit explained in *Norman* that

> [t]o invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by "necessary implication," that "the remedy for its violation entails a return of money unlawfully exacted." *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000) (concluding that the Tucker Act provided jurisdiction over an illegal exaction claim based upon the Export Clause of the Constitution because the language of that clause "leads to the ineluctable conclusion that the clause provides a cause of action with a monetary remedy").

*Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005).

It is not the case, as Plaintiffs believe, that the BSA is not money-mandating simply because it does not expressly provide the taxpayer a remedy for an unauthorized FBAR penalty. Rather, the absence of money-mandating language is not fatal to jurisdiction so long as a monetary remedy can be implied for an illegal exaction under the relevant statute. *White Mountain Apache Tribe*, 537 U.S. at 477 ("To the extent that the Government would demand an explicit provision for money damages to support every claim that might be brought under the Tucker Act, it would substitute a plain and explicit statement standard for the less demanding requirement of fair inference that the law was meant to provide a damages remedy for breach of a duty."). In other words, "[the court] asks what would be the explicit or implicit remedy for the Government's violation of the statute." *Northern California Power Agency v. United States*, 122 Fed. Cl. 111, 115–16 (2015). If, "by necessary implication, the remedy would be a return of the payments that

were assessed. . .in violation of [the statute]," jurisdiction exists. *Id.* Thus, the court in *Greene* found that a monetary remedy could be fairly implied for an illegal offset against a tax refund made pursuant to 31 U.S.C. § 3720A because the taxpayer would have no other recourse for return of those funds. *Greene v. United States*, 124 Fed. Cl. 636, 641 (2015). The same logic held sway in *Starr*, where the court found that if jurisdiction did not exist, the government "could nationalize a private corporation, as it did to AIG, without fear of any claims or reprisals." *Starr*, 121 Fed. Cl. at 464–65.

The analysis is the same with respect to the BSA. The statute authorizes the government to impose a penalty for failure to file an FBAR, unless the failure was due to reasonable cause. 31 U.S.C. § 5321(a)(5)(B)(ii)(I). If there was no failure to file or if the failure was due to reasonable cause, there should be no penalty and any money the government receives as payment of the penalty was illegally exacted in violation of the statute. Though the BSA admittedly lacks money-mandating language, it is by necessary implication that the taxpayer has a monetary remedy—the return of his illegally exacted funds—when the statute is violated. *Norman*, 429 F.3d at 1095; *N. California Power Agency*, 122 Fed. Cl. at 116; *White Mountain Apache Tribe*, 537 U.S. at 477. As a result, Plaintiffs could bring their statutory and constitutional claims in the Court of Federal Claims pursuant to the Tucker

Act. This, in turn, compels the Court to conclude that APA review is unavailable here, since Plaintiffs have an adequate remedy to replace it.[4]

### 3.2 The Little Tucker Act

Plaintiffs could not only assert a claim under the Tucker Act in the Court of Federal Claims, they could also raise a claim under the Little Tucker Act in either the district court or the Court of Federal Claims. The Little Tucker Act provides concurrent jurisdiction in the district courts and the Court of Federal Claims over suits against the United States for $10,000 or less founded upon "the Constitution, or any Act of Congress,. . .or upon any express or implied contract with the United States" and waives sovereign immunity for those claims. 28 U.S.C. § 1346(a)(2); *Mitchell*, 463 U.S. at 212–218. However, the Tucker Act limits the Court of Federal Claims to awarding damages and not granting injunctive or declaratory relief. *Richardson v. Morris*, 409 U.S. 464, 465–66 (1973). This limitation applies to district courts when they exercise jurisdiction under the Little Tucker Act, since the district court is essentially sitting in place of the Court of Federal Claims. *United States v. Sherwood*, 312 U.S. 584, 589–91 (1941).[5]

---

[4]The Court notes that the parties have not cited, and it has not located, specific guidance on whether APA review of FBAR penalties should be permitted to proceed or be rejected in favor of a Tucker Act claim. The Court found only one case coming close: *Moore v. United States*, No. C13–2063RAJ, 2015 WL 1510007 (W.D. Wash. Apr. 1, 2015). The court in *Moore* heard (and rejected on the merits) an APA challenge to the imposition of an FBAR penalty. *See id.* at *3. Nevertheless, the government appears not to have raised sovereign immunity in *Moore*, so the Court does not find *Moore* helpful on the specific question raised here.

[5]The Little Tucker Act also subsumes the requirement in the Tucker Act that there be a money-mandating statute or an illegal exaction. (Docket #19 at 7 n.5). Because that point was addressed above, *see supra* Part 4.1, the Court need not repeat its analysis here.

This limitation, Plaintiffs contend, undermines the government's contention that the Little Tucker Act is an adequate substitute for their APA claim. Plaintiffs argue first that because the FBAR penalties against them total $51,000, their claims exceed the jurisdictional reach of the Little Tucker Act. (Docket #17 at 9–10). However, the $10,000 limitation applies per claim, not per case, and because none of the individual FBAR penalties exceeds $10,000, the Little Tucker Act provides jurisdiction. *See Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983); *United States v. Louisville & Nashville R.R. Co.*, 221 F.2d 698, 703 (6th Cir. 1955); *Zumerling v. Devine*, 769 F.2d 745, 748 (Fed. Cir. 1985); *Commonwealth of Pa. v. National Ass'n of Flood Ins.*, 520 F.2d 11, 25 (3d Cir. 1975).

Second, Plaintiffs assert that the inability of the court to grant equitable relief when exercising jurisdiction under the Act is problematic. *Id.* at 10–11. They reason as follows:

> If the government declined to answer or counterclaim, plaintiffs could theoretically obtain a default judgment for refund of the $10,000. However, since the Tucker Act does not empower the district court to render declaratory relief, and a default judgment is not given preclusive effect under the doctrine of collateral estoppel, plaintiffs would remain liable for the balance of the civil penalty assessment. As such the United States would be able to offset any federal benefits to which plaintiffs may be entitled, including social security benefits.

*Id.* (internal citations omitted). The government claims that Plaintiffs' fear "is entirely theoretical and also incorrect." (Docket #19 at 4).

The Court agrees that Plaintiffs' argument is speculative. Moreover, the argument has been rejected by other courts. *See Briggs v. United States*, 564 F. Supp. 2d 1087, 1093 (N.D. Cal. 2008). If Plaintiffs were successful in

achieving a refund of even a partial payment of the FBAR assessments, the government would be barred by *res judicata* from seeking to collect the remainder of the assessments. *See id.* at 1092–93; *Consol. Edison Co. of N.Y.*, 247 F.3d at 1384–85 (if the plaintiff succeeded in obtaining a partial refund, one "cannot imagine that the United States would continue to require the [plaintiff] to pay unlawful exactions"). This Court agrees with *Briggs* inasmuch as once Plaintiffs were repaid, "it would be unlikely (and inappropriate) for defendan[t] to continue with wrongful offsets." *Briggs*, 564 F. Supp. 2d at 1094. Thus, the fact that a district court could not grant a prospective, equitable ban on future collection of the FBAR assessments under the Little Tucker Act is of no moment. *See Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005) (noting that "[t]he availability of an action for money damages under the Tucker Act. . .is presumptively an 'adequate remedy' for § 704 purposes" and "a final decision in a Little Tucker Act case. . .will finally resolve the issue and as a practical matter make repeated suits unnecessary"). Thus, Plaintiffs could bring their claims in this case under the Little Tucker Act.[6]

---

[6]The government argues, for the first time in its reply, that 28 U.S.C. § 1355 also affords an adequate alternative to the present request for APA review. (Docket #19 at 2). Section 1355 provides that federal district courts have original jurisdiction "of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade." 28 U.S.C. § 1355(a). Whether or not this statute provides an adequate alternative, Plaintiffs were not given a chance to respond to the government's position. The Court will, therefore, disregard it. *Studio & Partners v. KI*, No. 06-C-0628, 2008 WL 426496, at *6 (E.D. Wis., Feb. 14, 2008) (citing *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630–31 (7th Cir. 2007)).

### 3.3 Plaintiffs Have Not Established a Waiver of Sovereign Immunity

The parties' present dispute requires the Court to assess the nuances of Tucker Act and Little Tucker Act jurisdiction. But recall that the ultimate inquiry here is whether the United States has waived its sovereign immunity as to Plaintiffs' claims. This does not occur by implication; instead, waiver must be unmistakable. *Nelson*, 570 F.3d at 883–84. Waiver in this case must be decided by reference to the APA, which waives immunity only when the plaintiff lacks another adequate remedy elsewhere. 5 U.S.C. § 704. The question is not whether Plaintiffs might have a better chance of success in the present suit; rather, dismissal is required merely if they have an *adequate* remedy in another proceeding. *See Walsh v. Dep't of Veterans Affairs*, 400 F.3d 535, 537–38 (7th Cir. 2005); *Consol. Edison Co. of N.Y.*, 247 F.3d at 1383.

Considering these principles together, the Court is obliged to conclude that Plaintiffs have failed to meet their burden to show that sovereign immunity has been waived. *Macklin*, 300 F.3d at 819. Plaintiffs have an adequate alternative to this lawsuit in either the Tucker Act or the Little Tucker Act. Moreover, to the extent Plaintiffs believe that they should not be required to pay *any* of the FBAR assessments before filing suit, either by preemptively paying them to create jurisdiction under the statutes discussed above, or by waiting for the government to offset their funds from them administratively, this is merely a complaint that APA review might be better for them financially in the short term. It does not, standing alone, demonstrate that paying some or all of the assessments and filing a refund suit in the Court of Federal Claims is inherently inadequate. *Cf. Greene v. United States*, 124 Fed. Cl. 636, 641 (2015) (noting that illegal exaction claim does not require the taxpayer to first fully pay the tax liability). In any event,

Plaintiffs never expressly assert that there is a problem with Tucker Act or Little Tucker Act claims simply because they require a prepayment of the allegedly illegal penalty in order to create jurisdiction. As such, the Court remains unconvinced that the government has waived its sovereign immunity and it must dismiss Plaintiffs' claims.

## 4. CONCLUSION

Plaintiffs have not met their substantial burden to show that the government waived its sovereign immunity with respect to the claims they assert in this action. As a result, the complaint must be dismissed for failure to state a claim. The dismissal is without prejudice so that Plaintiffs may avail themselves of whatever other avenues for relief they deem appropriate, including potential claims under the Tucker Act or Little Tucker Act. *See Sorrentino v. Godinez*, 777 F.3d 410, 414–15 (7th Cir. 2015).

Accordingly,

**IT IS ORDERED** that the United States' motion to dismiss for failure to state a claim (Docket #15) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of January, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge